UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ESSEX INSURANCE COMPANY,
    Plaintiff,

v.

WILLIAM KRAMER & ASSOCIATES, LLC,
    Defendant.

No. 3:13cv1537 (MPS)

RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. #19]

    Essex Insurance Company ("Essex") commenced this negligence action against William Kramer & Associates ("WKA"), an insurance adjuster.  Essex claims WKA negligently caused Essex's failure to include a property's mortgagee, Intervest National Bank ("Intervest"), on an insurance claim payment for damage to the property.  Essex claims that as a result of its failure to include Intervest as a payee, Essex was forced to settle a lawsuit brought against it by Intervest.  Essex seeks damages of $1,000,000.00 from WKA to recoup the loss from its settlement with Intervest, and Essex has now moved for summary judgment on this claim.  Because there are multiple genuine issues of material fact, I DENY Essex's motion for summary judgment.

    I.     Undisputed Factual Background

    The following facts are undisputed according to the parties' Local Rule 56(a) Statements. In October 2005, Hurricane Wilma damaged four properties in Broward County, Florida.  IDM Management, Inc. owned these properties.  IDM held insurance against damage on the properties, which consisted of an initial layer of $5,000,000.00 by Aspen Specialty Insurance Company and an additional combined layer of $10,000,000.00 by Essex and James River Insurance Company.  After IDM notified Essex of the damage wrought by Hurricane Wilma, Essex retained independent adjustor WKA to determine the loss to the properties.

1

At the time, Intervest National Bank held an interest as a mortgagee on one of the four properties called "The Villas." In 2006, in the process of determining the loss to the properties, WKA sent Essex a series of communications stating there was no mortgagee currently holding an interest in The Villas. In early 2007, Essex Executive Claim Examiner Richard Verna requested WKA Adjuster Robert Oberpriller that he advise Verna as to whether there was a mortgagee interest on The Villas. In early March 2007, Mr. Oberpriller made attempts to obtain this information from IDM's insurance broker but received no response to his inquiries. Essex nonetheless completed its claim payment for The Villas on March 19, 2007. The payments listed IDM and IDM's public adjustors, Alex N. Sill Company and Brodsky & Associates, Inc., as payees. The claim payments did not include Intervest as a payee.

Intervest brought suit against Essex (among others), asserting Intervest received an inadequate claim payment relative to its interest in the damaged property. Essex settled with Intervest for $1,000,000.00 on February 27, 2013. Essex now seeks damages from WKA for the same amount, asserting WKA negligently failed to notify Essex of Intervest's interest, and as a result, is responsible for Essex's loss from its settlement with Intervest.

II.     Standard of Review

To succeed in its motion for summary judgment, Essex must demonstrate that there is an absence of a genuine dispute over any material fact supporting its claim, and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted). "When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his

pleading; rather his response . . . must set forth specific facts demonstrating that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). When reviewing the summary judgment record, a district court must resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party. *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). If evidence regarding a material issue is such that a reasonable inference can be drawn in the non-movant's favor, the motion should be denied. *Id.*

### III. Genuine Issues of Material Facts Exist as to Plaintiff's Claim

Negligence and notice are ordinarily questions of fact and thus are "ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." *Prodigy Services Co. v. South Broad Associates*, 64 F.3d 48, 52, 53 (2d Cir. 1995) (citations omitted). In this case, multiple genuine issues of material fact exist with regard to Essex's negligence claim against WKA.

The parties dispute—and the record does not resolve—whether WKA had knowledge of Intervest's interest in The Villas property. Essex cites a deposition of Dennis Martin, a WKA employee, in which Mr. Martin admitted that a document listing Intervest as a mortgagee of The Villas was found in WKA's IDM file. Pl.'s Mem. Ex. DD, Martin Dep. at 120–22. In the same deposition, however, Martin stated that he was not aware—and doubted Mr. Oberpriller was aware—of the document's existence until litigation involving this transaction commenced, i.e., years after Essex made final payment on the claim. *Id.* at 25–28, 131, 202. The same dispute exists as to Mr. Oberpriller. Essex points to Mr. Oberpriller's deposition testimony in which he admits if he had seen the document discussed above, he would have been on notice about Intervest's interest. *See* Pl.'s Mem. Ex. EE, Oberpriller Dep. at 152–53. But Essex's citation

ignores Mr. Oberpriller's subsequent statement that he believed he *did* look in the file and the document at issue was not present—suggesting, again, that it may not have been in the file at the relevant time. *Id.* at 153. Construed in the light most favorable to WKA, the record would not require a reasonable jury to find that the document was in the file before Essex made its final payment and thus that WKA knew or should have known of Intervest's interest at the relevant time.

There is also a dispute as to causation, i.e., whether Mr. Verna would have included Intervest as a payee on the claim payment *even if* Mr. Oberpriller had notified Mr. Verna of Intervest's interest in the property. Mr. Verna admitted in his deposition testimony that on some claim payment checks he "chose not to include the endorsed mortgagees . . . as an accommodation to the policyholder." Def.'s Mem. Ex. 2, Verna Dep. at 21–23. The record does not prove that this was an instance in which Mr. Verna would have included Intervest in the claim payment had he known of Intervest's interest as a mortgagee. In support of its motion, Essex cites a portion of Mr. Verna's deposition in which he stated he usually asks the policyholder how to proceed with regard to an endorsed mortgagee when issuing a claim payment. *Id.* at 21–23. But before issuing the final claim payment check, Mr. Verna consulted an attorney and executed a hold-harmless and indemnity agreement with IDM with regard to the final claim payment so as to ensure that if there was a mortgagee, Essex would not be liable for further claim payments. *Id.* at 69. Thus, a reasonable jury could find that Mr. Verna would not have issued the claim payment any differently had he known of Intervest's interest as the mortgagee. A further dispute about causation relates to whether Mr. Verna relied on communications from WKA advising that there was no mortgagee on The Villas property. The record indicates that even after receiving those communications, Mr. Verna asked WKA to

4

determine if there was a mortgagee on The Villas property, and after WKA told him it had inquired of IDM's broker and had not received a response, Mr. Verna proceeded to issue the final payment without waiting further.

Finally, the parties dispute whether Essex was left in a position in which it was forced to settle its lawsuit with Intervest. Essex provides little evidence other than Intervest's complaint demonstrating the legal basis for Intervest's claim against Essex, only stating that Essex was "compelled to settle the Intervest action." Pl.'s Local Rule 56(a)(1) Statement ¶ 50.[1] Essex makes no attempt to show, for example, that the facts and relevant law supported the notion that it owed any duty to an undisclosed mortgagee. Essex has thus failed to meet its burden of showing that there is no genuine issue of material fact or that it is entitled to judgment as a matter of law on this question.

## IV.   Conclusion

For the reasons stated above, I DENY Essex's motion for summary judgment. The parties shall file a Joint Trial Memorandum within 60 days of this order. Instructions for completing the Joint Trial Memorandum are available on the undersigned's page of this Court's website. If both parties want the Court to refer this matter for settlement with a Magistrate Judge or Para-Judicial Officer, they shall file a joint statement certifying that (1) counsel have conferred with their clients and each other, (2) the parties wish to proceed to mediation, (3) the parties are willing to participate in settlement efforts at such mediation in good faith, and (4) counsel believe that a mediation stands at least a reasonable chance of resolving the case without trial. Should the parties file such a statement, the Court will suspend the deadline for filing the Joint Trial Memorandum.

---

[1] Essex's Local Rule 56(a)(1) Statement misnumbers its paragraphs beginning after Paragraph 34. This citation refers to what is listed in the Statement as ¶ 50, but would be numbered properly as ¶ 54.

                          IT IS SO ORDERED


                          __/s/_____
                          Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
               July 6, 2015